**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

SHELDON K. RENNIE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801

Date Submitted: August 17, 2023
Date Decided: September 19, 2023

Jason Z. Miller
SMITH, KATZENSTEIN & JENKINS LLP
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801

Daniel B. Rath
Rebecca L. Butcher
Jennifer L. Cree
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801

RE: *Lynn Tilton and Octaluna III, LLC v. Stila Styles, LLC*
C.A. No. N23C-02-088-SKR CCLD
Defendant's Partial Motion to Dismiss and Plaintiff's Motion for Partial
Judgment on the Pleadings

Dear Counsel:

This letter decision resolves Defendant's Partial Motion to Dismiss and Plaintiff's Motion for Partial Judgment on the Pleadings. For the reasons explained below, the motions are **DENIED**.

## I. BACKGROUND[1]

Plaintiffs, Lynn Tilton and Octaluna III, LLC ("Octaluna"), an entity controlled by Ms. Tilton, seek to recover $22 million in payments for tax obligations allegedly owed by Defendant Stila Styles ("Stila" or the "Company") between 2009 and 2015.[2] Stila is a prestige cosmetics firm, incorporated in Delaware and governed by a Limited Liability Company Agreement (the "LLC Agreement").[3] As set forth in the LLC Agreement, the Company's sole member is Zohar III Limited ("Zohar III"), a pooled investment fund, that helped finance the acquisition of Stila in 2009.[4] Ms. Tilton was Stila's sole Manager from its formation in 2009 until 2022.[5]

Under Section 4.9 of the LLC Agreement, the Manager is required to make tax distributions owed for a given year to each Member.[6] If a Member is a "disregarded entity," the distribution goes directly to the owner of such Member.[7] Section 4.9 states in relevant part that:

---

[1] The facts are drawn from the well-pleaded allegations in the Complaint and documents incorporated by reference. Additional facts are drawn from the pleadings as admitted and denied in Defendant's Answer to the Complaint. *See* D.I. No. 1 ("Compl."); D.I. No. 15 ("Ans.").

[2] Compl. ¶ 1.

[3] *Id*., Ex. 1 ("LLC Agreement"); Compl. ¶¶ 2, 15.

[4] Compl. ¶ 2; LLC Agreement Preamble.

[5] Compl. ¶ 2.

[6] LLC Agreement § 4.9.

[7] *Id*.

Within sixty days of the end of each Taxable Year … the Manager will cause the Company to distribute to each Member an amount equal to the excess of (a) the product of (i) the maximum combined United States Federal and state income tax rate applicable to corporations (or individuals, if higher) doing business in the state to which the Company allocates at least ten percent of its Net Income and which has the highest such rate and (ii) the excess of the Net Income of the Company for all Taxable Years over the Net Losses of the Company for all prior Taxable Years (the "Net Income Excess") over (b) amounts of previous distributions theretofore made under this Section 4.9. Such amount will be distributed to the Members in proportion to the amount of the Net Income Excess allocated to such Members; provided that any amount that would be distributed to a Member that is a disregarded entity for United States Federal income tax purposes will instead be paid directly to the owner of such Member that is considered the Member for United States Federal income tax purposes.[8]

From 2009 to 2015, Stila generated taxable income.[9] During the relevant time, Zohar III was a disregarded entity, and the owner of Zohar III was Octaluna.[10] As a result, under Section 4.9, Stila owed Octaluna tax distributions for years 2009 to 2015.[11]

Stila did not make the distributions. Instead, as Stila's sole Manager and also on behalf of Octaluna, Ms. Tilton agreed to defer payment so that the available cash

---

[8] *Id.*

[9] Compl. ¶ 4.

[10] *Id.* ¶ 20.

[11] *Id.* ¶¶ 2, 3, 20.

could be used to meet Stila's working capital and cash flow needs.[12] Plaintiffs allege no specific terms to this purported deferral agreement, though according to them, both parties "understood … that Stila would pay the deferred Tax Distributions as soon as it had the available cash to do so without imperiling its business."[13] Plaintiffs only identify Stila's audited financial statements, which record the value of the tax obligations owed to Octaluna.[14] They are copied below:

**Stila Styles LLC**
**Cash Balances and Taxes Due**
**2009-2020**

| | Dec 31, 2009 | Dec 31, 2010 | Dec 31, 2011 | Dec 31, 2012 | Dec 31, 2013 | Dec 31, 2014 | Dec 31, 2015 | Dec 31, 2016 |
|---|---|---|---|---|---|---|---|---|
| Total Cash | $7,835 | $92,482 | $4,154,050 | $4,420,791 | $5,358,711 | $11,341,313 | $9,030,719 | $11,954,758 |
| Cumulative Owed | | | 2,586,125 | 5,489,768 | 8,803,391 | 13,980,385 | 16,095,878 | 21,797,437 |
| **Tax Distribution Owed:** | | | | | | | | |
| For y/e 2009 | | 1,148,767 | | | | | | |
| For y/e 2010 | | | 1,437,358 | | | | | |
| For y/e 2011 | | | | 2,903,643 | | | | |
| For y/e 2012 | | | | | 3,313,623 | | | |
| For y/e 2013 | | | | | | 5,176,994 | | |
| For y/e 2014 | | | | | | | 2,115,493 | |
| For y/e 2015 | | | | | | | | 5,701,559 |

---

[12] *Id.* ¶¶ 22-23.

[13] *Id.* ¶ 23.

[14] *Id.* ¶¶ 4, 23; *Id.*, Ex. 3 (Stila Styles LLC Cash Balance and Taxes Due 2009-2020).

In March 2018, Zohar III filed for bankruptcy.[15] Shortly thereafter, Ms. Tilton, Zohar III and other creditors entered into a settlement agreement.[16] The settlement agreement, approved by the Bankruptcy Court, provided for the sale of Stila.[17] In March 2021, Stila's officers and outside auditors discussed how to handle the allegedly deferred tax distributions.[18] Stila then received invoices dated as of April 19, 2021 for payment of the tax distributions.[19] Stila "agreed to pay the amount owed to Octaluna III," and accordingly set aside money in a separate account.[20]

On April 30, 2021, Zohar III removed Ms. Tilton as Stila's sole manager, which the Court of Chancery upheld in *Zohar III, Limited v. Stila Styles, LLC and Lynn Tilton*, No. 2021-0384-KSJM (the "Chancery Action").[21] Ms. Tilton appealed to the Delaware Supreme Court.[22] While the appeal was pending, on September 21, 2022, Ms. Tilton requested the Bankruptcy Court to order the monetization of Stila and freeze the approximately $22 million Stila had set aside for the tax

---

[15] Compl. ¶ 5.

[16] *Id*. ¶ 25.

[17] *Id*.

[18] *Id*. ¶ 24.

[19] *Id*.

[20] *Id*.

[21] *Id*. ¶¶ 26-27.

[22] *Id*. ¶ 27.

distributions.[23]  The Bankruptcy Court found that it only had the jurisdiction to order the monetization of Stila.[24]  On October 12, 2022, the Delaware Supreme Court affirmed the decision in the Chancery Action.[25]  On November 7, 2022, counsel for Ms. Tilton's affiliated entities requested Stila to pay the $22 million in tax distributions.[26]

Stila has not made the requested tax distributions.[27]  On February 16, 2023, Plaintiffs initiated this action by filing a complaint against Stila for breach of contract concerning the unpaid tax distributions (Count I), and fees and expenses that were not advanced pending the appeal of the Chancery Action (Counts II and III).  Stila moved to dismiss Count I and answered Counts II and III.[28]  Ms. Tilton then moved for partial judgment on the pleadings on Counts II and III.[29]

## II.    STILA'S CONTENTIONS

Stila makes two arguments in moving to dismiss Plaintiffs' breach of contract claim for the unpaid tax distributions.  The first is that the claim is time-barred

---

[23] *Id.* ¶ 28.

[24] *Id.* ¶ 29.

[25] *Id.* ¶ 27.

[26] *Id.* ¶ 30.

[27] *Id.*; *see id.*, Ex. 2 (November 7, 2022 Letter).

[28] D.I. No. 9; D.I. No. 10.

[29] D.I. No. 17.

because it accrued sixty days after each taxable year that the payments were not made.[30]  The claim for the last distribution therefore would have expired on March 2019.[31]  This argument assumes no deferral agreement existed.

The second is that this action should be stayed or dismissed in favor of the earlier filed bankruptcy proceeding of Zohar III.  There, Zohar III, in an adversary proceeding, raised fiduciary duty claims against Ms. Tilton for her alleged mismanagement of certain portfolio companies, including Stila (the "Adversary Proceeding.")[32]

## III.  STANDARD OF REVIEW

In resolving a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[33]  The Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the

---

[30] Defendant Stila Styles, LLC's Opening Brief in Support of Partial Motion to Dismiss ("Def.'s Motion") at 13-15.

[31] *Id*. at 14-15.

[32] *Id*. at 23-24.

[33] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

non-moving party."[34]  Still, even with those cautions in mind, Delaware's pleading standard is "minimal."[35]  Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[36]

## IV.  DISCUSSION

Defendant's lead argument for dismissal is that Plaintiffs' claims are untimely.  Claims for breach of contract are subject to a three-year statute of limitations in Delaware.[37]  Courts apply a three-step analysis to determine whether a claim is time-barred – (1) when the cause of action accrues, (2) whether the statute of limitations may be tolled, and (3) if a tolling exception applies, whether the plaintiff was on inquiry notice.[38]  A cause of action "accrues" at the time of the wrongful act.[39] If a cause of action accrues outside the statute of limitations, the plaintiff has the burden of pleading facts that one of the tolling doctrines applies, and

---

[34] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[35] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[36] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted).

[37] 10 *Del. C.* § 8106.

[38] *AssuredPartners of Virginia, LLC v. Sheehan,* 2020 WL 2789706, at *12 (Del. Super. May 29, 2020).

[39] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).

if a tolling exception applies, the court must determine whether the plaintiff was on inquiry notice of the claim based on the allegations.[40]

Plaintiffs allege that an agreement existed between Stila and Octaluna to defer the tax distributions owed from 2009 to 2015.[41] Absent this deferral agreement, any cause of action for the tax distributions would accrue sixty days from the end of each taxable year that any distributions were owed, and expire three years later under the applicable statute of limitations.[42] In that scenario, absent a tolling exception, the latest that Plaintiffs could have asserted a claim for any tax distributions would have been March 2019.[43]

To establish that a deferral agreement existed, and thereby extend (or toll) the accrual date, Plaintiffs allege the following:

- For each tax year thereafter, through 2015, Stila had taxable income and therefore owed a Tax Distribution in each of those years. But Ms. Tilton repeatedly agreed to defer those Tax Distributions because, as shown in the chart below, Stila did not have sufficient cash to both make the tax payments to Octaluna III and sustain its working capital obligations and operating costs.[44]

---

[40] *Young & McPherson Funeral Home, Inc. v. Butler's Home Improvement, LLC*, 2015 WL 4656486, at *1 (Del. Super. Aug. 6, 2015).

[41] Compl. ¶¶ 4, 22-24.

[42] *See* LLC Agreement § 4.9; 10 *Del. C.* § 8106.

[43] *See* Def.'s Motion at 3.

[44] Compl. ¶ 22.

- It was understood by both parties, however, that Stila would pay the deferred Tax Distributions as soon as it had the available cash to do so without imperiling its business.[45]

- Beginning in March 2021, Ms. Tilton, Stila's CFO, Greg Gittens, and the outside auditors discussed how Stila was to handle the outstanding Tax Distributions. In connection with these discussions, invoices were provided to Stila for the outstanding Tax Distributions for 2009 through 2015, all of which are dated April 19, 2021. The Company agreed to pay the amount owed to Octaluna III. Stila transferred funds from its operating account to its account at BBVA bank, so that sufficient funds were in that account to pay the Tax Distributions.[46]

- The Company's audited financial statements each year stated that Stila was required to make a Tax Distribution but had not yet done so, and as such, the value of the taxes owed to Ms. Tilton was recorded in Members Equity.[47]

## A. PLAINTIFFS HAVE ADEQUATELY PLED THAT THERE WAS A DEFERRAL AGREEMENT

Under Delaware's notice pleading standard, Plaintiffs sufficiently allege that a deferral agreement existed. Stila generated taxable income from 2009 to 2015, but based on its financial statements, did not appear to have sufficient cash to make both the tax payments to Octaluna III as well as sustain its working capital obligations and operating costs.[48] In support of these allegations, Plaintiffs attached to the

---

[45] *Id.* ¶ 23.

[46] *Id.* ¶ 24.

[47] *Id.* ¶ 4; Compl., Ex. 3.

[48] Compl. ¶ 22.

Complaint an exhibit purporting to compare Stila's cash balances and tax obligations owed during the relevant period.[49]  This exhibit demonstrates that Stila did not have sufficient cash to make both the tax payments and meet its working capital and cash flow needs, because the "cumulative owed" in tax distributions was greater than the available cash in nearly all years during the relevant period.[50]  It also shows that the tax distributions owed in a given year carried over into the next year such that, by the end of the 2015 taxable year, the cumulative owed was nearly $22 million.  Based on this circumstantial evidence, a reasonable, plaintiff-friendly inference is that a deferral agreement existed.

## B. PLAINTIFFS HAVE ADEQUATELY PLED THAT THE DEFERRAL PERIOD EXTENDED UP TO FEBRUARY 16, 2020

Plaintiffs filed their claims on February 16, 2023.  In order for Plaintiffs to preserve their claims under the three-year statute of limitations for all the tax distributions owed during the relevant period, Plaintiffs must sufficiently allege that all payments were deferred until at least February 16, 2020.  At that point, any deferred tax distributions would become due, the non-payment of which would

---

[49] *See id.*, Ex. 3.

[50] *Id.*

constitute a breach, thereby starting the three-year clock on a breach of contract claim.[51]

Plaintiffs' allegations leave much to be desired. But fortunately for Plaintiffs, the pleading standard under Rule 12(b)(6) motion is minimal. Plaintiffs sufficiently allege that a deferral agreement extended to at least April 19, 2021. Beginning in March 2021, Stila's officers and outside auditors discussed how to handle the tax distributions, and invoices that were provided to Stila, dated as of April 19, 2021.[52] Based on this allegation, the plaintiff-friendly inference is that the deferral agreement extended to at least April 19, 2021.

While Plaintiffs' claims survive at this stage in the proceedings, the lack of detail that Plaintiffs provide as to the alleged deferral agreement and the dual roles Ms. Tilton held at Stila and Octaluna, warrant limited discovery as to the nature and terms of the agreement. Plaintiffs provide no documentation about the deferral agreement itself and allege only circumstantial evidence. They do not plead any specific terms of the deferral agreement, such as when the agreement was first made, how long each year's tax distributions would be deferred, or how the agreement was memorialized. Moreover, Ms. Tilton was the sole Manager of Stila, while she also

---

[51] Alternatively, Plaintiffs may show any breach occurring prior to February 16, 2020 was tolled.

[52] Compl. ¶ 24.

controlled Octaluna when the deferral agreement was allegedly entered into. In light of these concerns, limited discovery as to the nature and terms of the alleged deferral agreement to determine whether the claims are barred by the statute of frauds or statute of limitations will help efficiently move this case forward.[53]

## V. ADVANCEMENT

Ms. Tilton prematurely moves for judgment on the pleadings as to Counts II and III regarding her advancement rights for legal fees and expenses incurred between May and August 2022 in the Chancery Action. Rather than provide Stila's counsel with an opportunity to determine the reasonableness of Ms. Tilton's advancement requests, Ms. Tilton's counsel precipitously sought court intervention. These are the exact sort of litigation tactics that unnecessarily burden the Court and

---

[53] Stila also moves to dismiss, or in the alternative, stay this action in favor of the Adversary Proceeding. But it is not evident that Plaintiffs' claims are at issue in that proceeding or that the proceeding would resolve them. The complaint in the Adversary Proceeding contains fiduciary duty claims against Ms. Tilton for placing "provisions in the LLC Agreements of Portfolio Companies to compel them to separately make tax distributions to her, by bypassing the Zohar Funds…entirely." Def.'s Motion, Ex. A (Bankruptcy Complaint) ¶ 174. This action, on the other hand, concerns the *non-payment* of tax distributions, not the *allocation* of distributions already made. Though Stila argues that the Adversary Proceeding challenges the validity of the underlying provision that gives rise to a claim for the tax distributions, the Adversary Proceeding in fact appears to be challenging the last clause of Section 4.9, not the entirety of Section 4.9. *See* LLC Agreement § 4.9. That is, the allegations take aim at the clause in Section 4.9 whereby distributions are given directly to Octaluna, as opposed to Zohar III, due to Zohar III's disregarded status. *See* Bankruptcy Compl. ¶ 174. Based on the current record, it is not sufficiently clear that the issue of whether Stila owes any tax distributions for the years 2009 to 2015 would be resolved in the Adversary Proceeding such that a stay is warranted.

vitiate what would otherwise be a good faith petition for judicial relief. Ms. Tilton's motion for judgment on the pleadings is therefore unripe.

Ms. Tilton seeks fees and expenses arising out of the Chancery Action between June 2022 and October 2022 for a total of $872,029.27.[54] On May 1, 2021, Zohar III initiated the Chancery Action to determine the rightful manager of Stila.[55] On July 11, 2022, the Court of Chancery held that Zohar III properly appointed Kevin Carey as Stila's manager.[56] On August 8, 2022, Mr. Carey was appointed manager of Stila.[57] On October 12, 2022, the Delaware Supreme Court affirmed the Chancery Action.[58]

On December 28, 2022, Ms. Tilton's counsel demanded approximately $900,000 in fees incurred between June and October 2022.[59] The attached invoices were redacted in their entirety, except for the invoice amounts.[60] In response, on January 3, 2023, Stila's counsel requested:

(i)     unredacted copies of the invoices;

---

[54] *Id.* ¶ 36.

[55] *Id.* ¶ 26.

[56] *Id.* ¶ 27.

[57] *Id.*

[58] *Id.*

[59] Ans. Response 12.

[60] *Id.*

(ii) unredacted copies of all invoices for which Stila provided advancement under Ms. Tilton's authorization;

(iii) the undertaking signed by Ms. Tilton;

(iv) any documents by or undertaken for Stila of its advancement or indemnification obligations made before Ms. Tilton began receiving advancement payments;

(v) applicable D&O insurance policies;

(vi) documentation concerning claims under the D&O policies;

(vii) all insurance companies' responses to claims made under the D&O policies.[61]

On February 13, 2023, Ms. Tilton's counsel provided partially redacted copies of the invoices.[62] The same day, Plaintiffs filed the complaint, seeking, in Count II and III, $872,029.27 in advancement costs, plus interest and fees on fees.

The motion for judgment on the pleadings is unripe. Ms. Tilton's counsel frustrated any viable process to resolve the advancement requests in good faith by providing partially redacted invoices the same day that they filed the instant action, seeking payment of those entries. Whether the entries themselves are reasonable or not is a factual dispute, and until the parties meet and confer on a good faith basis to resolve the advancement demands, moving for partial judgment on the pleadings is

---

[61] *Id.*

[62] *Id.*

not ripe, and hence, improper. The Court advises the parties to agree to a *Fitracks*-type process to resolve the disputed amounts, with the opportunity to file an appropriate motion for resolution of any remaining amounts in dispute.

## IV. CONCLUSION

Based on the foregoing, Defendant's Partial Motion to Dismiss is **DENIED**, and Plaintiff's Motion for Partial Judgment on the Pleadings is **DENIED.**

As the parties have made clear, key issues remain regarding the nature of the deferral agreement. The parties shall engage in a meet-and-confer within three weeks of the date of this letter opinion. The parties will then submit a stipulated and proposed limited discovery schedule. After the close of limited discovery, the parties may file abbreviated summary judgment applications on the timeliness question and potential statute of frauds defense.

In addition, the parties shall engage in a meet-and-confer within two weeks of this Opinion regarding the outstanding advancement requests. They shall provide a joint report to the Court within one month of this letter opinion. At a minimum, Stila's counsel will respond to the advancement requests in writing, identifying each specific time entry or expense to which Stila objects and explain the nature of the objection. The response shall cite any legal authority on which Stila relies. Ms.

Tilton's counsel will reply to the advancement response in writing and provide supporting information and authority.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge